# CASES

# SUPREME JUDICIAL COURT

## COUNTY OF WASHINGTON, JULY TERM, 1839.

---

## *Proprietors of* MACHIAS *vs.* JOHN WHITNEY.

Where no monuments are named in a grant, and none are intended to be afterwards designated as evidence of the extent of it, the distance stated therein must govern.

But where the legislature make a grant, and require by the terms of it, that an actual survey should be made, so that the land granted might be designated upon the earth and separated from the ungranted land, and that the survey and plan should be returned and accepted by the grantors before the title should pass to the grantee, and the survey is made, and the plan is returned and accepted; the extent of the grant is to be determined by the actual location upon the earth.

Where there is an excess of measure in an ancient survey and location of a grant, amounting to one seventeenth part, although it is the province of the jury to decide what circumstances occasioned the excess, and what was the intention of the party making it, and to determine whether there was fraud or not; yet the mere fact of the existence of such excess would not warrant the jury in drawing the inference that there was fraud.

Where a tract of land was granted by the Commonwealth in 1770, to be surveyed and located by the grantees, and a plan thereof was to be returned and accepted by the legislature; and where the surveyor and chainmen were sworn by one of the grantees, as appeared on the face of the plan so returned and accepted; the grantees cannot afterwards object, because the oath was thus administered.

THIS was a writ of entry. All the facts which the papers in the case furnish are found in the opinion of the Court. When the

demandants introduced the original warrant, dated in 1771, and their records, to show their organization as proprietors, the tenant objected that there was no evidence, that the proprietors were notified as required by the warrant. WESTON C. J. presiding at the trial, ruled, that after such a lapse of time such notice was to be presumed. It appeared that *Jonathan Longfellow,* who administered the oath to the surveyor and chainmen, was one of the proprietors of the township, and it was contended, by the counsel for the tenant, that the survey and plan were thereby vitiated ; but the Court ruled, that as it was returned on the plan that the oath was administered to the surveyor and chainmen by *Longfellow,* and as it was known to the legislature that he was a proprietor, that any objection on this account was waived by the legislature on their acceptance of the survey and plan. It appeared, that the land demanded was within the grant to the demandants, according to the actual survey and location, but there was evidence tending to show, that the width of the township, instead of being eight miles, the distance specified in the grant, was by accurate admeasurement eight miles and an half, and that there was an equal excess in the side lines of the township, and it was thereupon contended, that the demandants ought to be restricted to the exact courses and distances set forth in their grant, and that the excess in the survey and location was evidence of fraud on the part of the demandants. The Court ruled, that the actual survey and location made and marked by the surveyor on the earth and on the plan, would determine the extent of the township, and being in accordance with the large and liberal measure of that early day, was no evidence of fraud. The verdict was for the demandants, and was to be set aside, if the ruling upon either of the points taken was erroneous.

The case was argued in writing, by *Clifford,* for the tenant, and by *Mellen* and *R. K. Porter,* for the demandants.

*For the tenant,* it was contended, that the demandants should be restricted to the limits of their grant, which was a tract ten miles by eight, and which would not include the premises demanded. The grant commences at a definite and fixed point, and runs by course and distance only, ten miles one way and eight the other. No monuments whatever, but the starting point, are mentioned or

referred to in the legislative grant. No location by the proprietors could give to themselves a larger tract of territory, or vary their limits. As there were no monuments referred to in the grant, none could be erected in conformity to the grant. The act of confirmation is in the words of the original grant, and it cannot be wise to extend by construction the act of confirmation to cover territory never within the intention of the legislature. 5 *Serg. & R.* 234; *Linscott* v. *Fernald,* 5 *Greenl.* 503; 4 *Munf. R.* 475; 17 *Mass. R.* 210; 6 *Mass. R.* 133. A grant made by the public, is not to be extended by implication. 10 *Coke,* 112; 2 *Black. Com.* 347; 12 *Mass. R.* 252; *Bac. Ab. Prerogative, F* 2; 3 *T. R.* 288; 7 *Pick.* 461. The demandants had no rights whatever until the act of confirmation, which did not pass until 1784, and then only to the extent of the original grant. *Hill* v. *Dyer,* 3 *Greenl.* 441. The counsel took an extended view of the law in relation to frauds, and contended, that although there might not be an uniformity of decision, still the great weight of authority was, that fraud was a question of fact and not of law, and that the jury should have been left to have decided, whether there was or was not fraud in the survey and location by the demandants; and urged, that whether the decision was to be made by the jury or by the Court, the facts showed fraud. He cited *Sherwood* v. *Marwick,* 5 *Greenl.* 295; 10 *Coke,* 56; 7 *Cowen,* 301; 8 *Cowen,* 448; 4 *Wend.* 301; 7 *Wend.* 436; 12 *Mass. R.* 378; 4 *Conn. R.* 450; 5 *Greenl.* 96; 3 *Greenl.* 425; 1 *Pick.* 389; *ib.* 288; 15 *Mass. R.* 246; 8 *Johns. R.* 446; 5 *Johns. R.* 258; 19 *Johns. R.* 218; 1 *M. & Selw.* 251; *Wilcox,* 662; 9 *Johns. R.* 337; 2 *Cowen,* 431; 3 *Cowen,* 166; 1 *Bay,* 173; 2 *Bay,* 546; 1 *Hawks,* 341; 2 *Bibb,* 416; 3 *Marshall,* 239; 2 *N. H. Rep.* 13; *ib.* 222; 3 *N. H. Rep.* 170. It was also contended, that the legislature did not waive any objection to the oath to the surveyor and chainmen, and that in fact they had never accepted that survey.

*For the demandants,* it was contended :—

1. After the lapse of sixty-five years, the Court will presume that notice was duly given of the proprietors' meeting. 2 *N. H. Rep.* 310; 14 *Mass. R.* 145; 14 *Mass. R.* 177; 10 *Mass. R.* 105; 6 *Greenl.* 145; 3 *ib.* 290; 4 *ib.* 508; 6 *ib.* 9; 4 *Pick.* 258; 8 *Greenl.* 343.

2. The administering of the oath by *Longfellow* was good. It was a mere ministerial act. And if objectionable, the legislature must have seen it, and waived the objection. *Barnard* v. *Fisher,* 7 *Mass. R.* 71.

3. The demandants are entitled to hold to the extent of the survey and location. *Brown* v. *Gay,* 3 *Greenl.* 126; *Pike* v. *Dyke, ib.* 213; *Ripley* v. *Berry,* 5 *Greenl.* 24; *Esmond* v. *Tarbox,* 7 *Greenl.* 61; *Loring* v. *Norton,* 8 *Greenl.* 61; *Pernam* v. *Wead,* 6 *Mass. R.* 131; *Howe* v. *Bass,* 2 *Mass. R.* 380.

4. The surplus in the measure is nothing uncommon, but well known to be usual in those times. It cannot therefore be evidence of fraud. Now, although fraud is a question for the jury generally, yet what is legal evidence of fraud is a question of law, and in many cases what constitutes fraud. *Laidlaw* v. *Organ,* 2 *Wheat.* 178; 3 *Stark. Ev.* 1626, 1627, 1628.

The opinion of the Court was drawn up by

SHEPLEY J. — From the report and documents referred to, it appears that a tract of land was granted by the General Court of the Province of *Massachusetts Bay,* to *Jones* and others, in 1770, described as commencing at a certain rock and extending by courses and distances from it, so as to be ten miles in length by eight miles in breadth. The grantees made a survey and returned a plan as required. By a certificate upon the plan it appeared, that the oath was administered to the surveyor and his chainmen by one of the grantees. The survey was also noted upon it, stating the courses and distances according to the grant and naming certain trees as the corner bounds, which were marked as monuments of the tract of land, thus bounded and separated from the ungranted land.

The close demanded is within the limits of this tract, as designated by the monuments and location upon the earth, but not within the limits of the grant, if the grantees are to be restrained to the exact measure. The plan was returned with these monuments noted upon it, and was accepted by the Provincial legislature in 1771.

The objection taken at the trial to the want of evidence of notice to the proprietors, of the time and place of their first meeting, has not been insisted upon in the argument. The acceptance of

the plan, with a full knowledge of the manner in which the survey was made, was binding upon the grantors, and they could not afterward object, that the oath was administered by one of the grantees.

The principal question is, whether the grantees acquired a title according to the actual location, or are to be restrained to the exact distances stated in the grant.

The argument for the defendant is, that the grantees are to be limited by the distances named : — 1. Because no monuments are named in the grant ; — 2. The grant and location passed no title, and the act of confirmation was in the language of the original grant, not confirming the actual location ; — 3. The ruling of the presiding Judge respecting the alleged fraudulent survey and location was erroneous.

When no monuments are named in a grant, and none are intended to be afterward designated as evidence of the extent of it, the distances stated must govern. But when the legislature grants and requires by the terms of the grant an actual survey to be made, so that the land granted may be designated upon the earth and separated from the ungranted land ; and that the survey and plan should be exhibited before the title passes to the grantee, there is a clear indication of an intention, that the extent of the grant should be determined by the actual location. And this would be necessary to enable the legislature with safety to itself or to its grantees to make grants and locations of the adjoining lands. The location of such a grant and the designation of monuments, fairly made according to the practice of the times, and accepted by the grantors, must be regarded as binding upon the parties. And the like rules as between individuals would apply to any difference between the plan and the lines and monuments designated upon the earth. The grantees would hold according to the bounds of the actual location. *Esmond* v. *Tarbox,* 7 *Greenl.* 61.

It is true, that without the act of confirmation the grantees would not have acquired a title. There is a recital in that act as follows ; " a plan of which tract, setting forth the extent and *boundaries* thereof, was in *July,* 1771, presented to, received, and accepted by the said court ;" then follows the confirmation of the grant as originally made without requiring any new survey or location.

There can be no reasonable doubt of the intention of the legislature, that the 'proprietors should hold according to the plan and boundaries thus recited, unless some unknown fraud had been practiced in making them.

The only evidence reported as indicative of fraud in the survey is, that the distances from monument to monument exceed the distances named in the grant by about half a mile. Where the presiding Judge speaks of the admeasurement "being in accordance with the large and liberal measure of that early day," it is reasonable to conclude, that he does so having reference to the evidence in the cause, although it is not reported. But if he is to be regarded as alluding to it as a matter of experience and history in our judicial tribunals and as well known to the jury, bringing it to their consideration as explanatory of the differences in distance, there is little reason to believe, that it was the occasion of injustice to any one. If the remark of the Judge, that under such circumstances, the excess in the distances "was no evidence of fraud," is to be regarded as withdrawing the question of fraud from the consideration of the jury, it was erroneous; it being their province to decide under what circumstances and with what intention the survey was made occasioning such differences.

But the experience of the Courts has shown, that excess of admeasurement is so uniformly indicated in surveys of that early period, that the Court is not prepared to say, that the excess, which was proved in this case, was evidence, which would warrant the jury in drawing an inference of fraud.

It does not appear in this case that the defendant was not an entire stranger to the title and without any right to impeach it. But supposing him to stand in such relation, as is alleged in the argument, does he appear to have any just cause of complaint that injustice has been done? The grantors have acquiesced in the location for more than fifty years without complaining of any fraud. Nor is there now any evidence of any such allegation on their part. With this, taking into consideration the terms of the act of confirmation, and the known customs of that period in making surveys, and the verdict cannot be regarded as unjust or improper. The merits, so far as they have been exhibited, appear to have been rightly decided. If the defendant has just cause of complaint that he

has not had a full hearing upon the facts, there is a proper channel for redress open to him.

*Judgment on the verdict.*